James GAVIN and Theresa Gavin,
his wife,

v.

READ CORPORATION, a Division of
Teledyne, Incorporated, et al.

v.

JOHN WOOD COMPANY and J. A. Cun-
ningham Equipment, Inc., Third-
Party Defendants.

Civ. A. No. 70–164.

United States District Court,
E. D. Pennsylvania.

March 21, 1973.

Galfand, Berger, Senesky & Lurie, by Joseph Lurie, Philadelphia, Pa., for plaintiffs.

F. Hastings Griffin, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Plaintiff, James Gavin who is a Pennsylvania citizen and resident, has filed suit on theories of negligence and strict liability for personal injuries alleged to have resulted from the breach of a duty owed to him by defendant Read Corporation (hereinafter referred to as "Read"), and defendant Cleveland Machine Controls. Plaintiff alleges that both defendants are corporations "incorporated under the laws of a state other than Pennsylvania and have their principal place of business in states other than Pennsylvania." The Court is presently called upon to rule on Read's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In support of its motion, Read, which is incorporated in the State of Delaware, avers that there is no complete diversity of citizenship as required by 28 U.S.C. § 1332, because it has its principal, and only place of business within Pennsylvania, the same state of which plaintiff is a citizen.

 To satisfy the jurisdictional requisites of the federal court in a diversity suit, none of the plaintiffs can be a citizen of the same state as any of the defendants. Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp., 461 F.2d 1140 (3rd Cir. 1972); Mission Insurance Company v. Mackey, 340 F.Supp. 824 (W.D.Mo.1971); Potter's Photographic Applications Co. v. Ealing Corporation, 292 F.Supp. 92 (E. D.N.Y.1968). By virtue of the 1958 amendment to 28 U.S.C. § 1332, a corporation has dual citizenship of both its state of incorporation and its principal place of business. Where plaintiff is a citizen of the same state as the principal place of business of one of the defendant corporations, diversity jurisdiction does not exist. Wymard v. McCloskey & Co., 342 F.2d 495 (3rd Cir. 1965), cert. denied, 382 U.S. 823, 86 S.Ct. 52, 15 L.Ed. 2d 68 (1965); Taussig v. Wellington Fund, Inc., 187 F.Supp. 179 (D.Del. 1960); aff'd, 313 F.2d 472 (3rd Cir. 1963), cert. denied, 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (1963). A party who seeks to establish jurisdiction, has the burden of proving all of the facts required to sustain it. Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct.

673, 86 L.Ed. 951 (1942); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1935). Thus, plaintiff has to establish that Read did not have its principal place of business in Pennsylvania. See Hoffman v. Lenyo, 433 F.2d 657 (3rd Cir. 1970); Joyce v. Seigel, 429 F.2d 128 (3rd Cir. 1970); Siegel v. Slaney, 419 F.2d 176 (3rd Cir. 1969); Law v. Converse, 419 F.2d 38 (3rd Cir. 1969); McSparran v. Weist, 402 F.2d 867 (3rd Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969).

On February 19, 1968, the plaintiff was injured during the course of his employment allegedly as a result of an improperly manufactured and designed power roll. According to plaintiff, several years prior to the accident, Read had manufactured and sold the power roll to John Wood Company (third-party defendant), the employer of the plaintiff. Subsequently, on August 6, 1968, Read and Teledyne, Inc., a Delaware corporation, executed a contract (Plan and Agreement of Reorganization) whereby Read agreed to convey, transfer, assign and deliver to Teledyne ". . . all of the assets, properties, business and good will of Transferor of every kind and description . . ." After August 6, 1968, the only assets that were retained by Read consisted of the Agreement itself, the shares of Teledyne, Inc., which Read received and which it completely distributed to its shareholders and cash not in excess of $10,000 to pay the costs and expenses of carrying out the Agreement "including the subsequent dissolution and liquidation of transferor." For sometime after August 6, 1968, the entire activities of Read essentially consisted of one officer forwarding correspondence and preserving the books and records of Read. Since August 6, 1968, there have been no formal meetings of officers or directors in Pennsylvania.

On January 14, 1970, plaintiff instituted this action. In an apparent attempt to counter Read's contention that it had its principal place of business in York, Pennsylvania, plaintiff initially alleged that as a result of the "Agreement" between Read and Teledyne, Inc., there had been either a merger or a de facto merger of the two corporations and that Teledyne, Inc., as the surviving corporation is the proper defendant, and is liable for the injuries due to the defects in the products manufactured by the extinguished corporation, Read, before the transfer of assets. However, plaintiff's present position as a result of recent discoveries, is that Read has never dissolved but is still in existence. This is not disputed by Read. Indeed, Read admits that "since August 6, 1968, it has remained a corporation incorporated and in good standing in Delaware."

In the fifth paragraph of its motion to dismiss, Read, declares that ". . . *at all times relevant to this action* [it] has had its principal place of business within Pennsylvania for the purposes of 28 U.S.C. § 1332(c)." (Emphasis ours.) Read urges that when only the events prior to the August 6, 1968 sale of assets are considered, its *principal place of business was clearly* York, Pennsylvania. Moreover, Read directs our attention to the fact that since that date its offices have remained there (in York, Pa.), and that as of October 28, 1971, it became a division of Vasco Metals, Inc., which is incorporated in Pennsylvania, and which has its only office at Latrobe, Pennsylvania. Read's assertions are of no consequence, since, as plaintiff correctly indicates, the significant date for the Court's consideration is January 14, 1970. Contrary to the mistaken position of Read, a party's citizenship is determined at the time the action is commenced and subsequent events cannot affect jurisdiction once it has attached. Gaines v. Dixie Carriers, Inc., 434 F.2d 52 (5th Cir. 1970); Television Reception Corp. v. Dunbar, 426 F.2d 174 (6th Cir. 1970); McNello v. John B. Kelly, Inc., 283 F.2d 96 (3rd Cir. 1960); Herpst v. S. B. I. Liquidating Corp., 279 F.Supp. 928 (E.D.Pa. 1968); Hamlin v. Holland, 256 F.Supp. 25 (E.D.Pa.1966); Barron & Holtzoff (Wright ed.) Sec. 26, n. 91.

██ The traditional tests for determining a corporation's principal place of business, such as the "operating assets", and the "nerve center" or "center of gravity" tests, see e. g. National Spinning Company v. City of Washington, N. C., 312 F.Supp. 958 (E.D.N.C.1970); Inland Rubber Corp. v. Triple A Tire Service, Inc., 220 F.Supp. 490 (D.C.N.Y. 1963); Scot-Typewriter Co. v. Underwood Corp., 170 F.Supp. 862 (S.D.N.Y. 1959); do not offer much assistance in determining the principal place of business of a corporation such as Read, which has sold all of its assets and has been in the process of winding up its business affairs but is still in existence at the time of the commencement of the action. Although the determination of principal place of business is a question of fact, it is well established in this Circuit that the determination as to what "facts are or are not helpful in deciding the [location of a corporation's principal place of business] is a question of legal standard . . . and is one for a court to decide as a question of law." Kelly v. United States Steel Corporation, 284 F.2d 850, 852 (3rd Cir. 1960); Knee v. Chemical Leaman Tank Lines, Inc., 293 F.Supp. 1094 (E.D.Pa.1968). Moreover, each case must be decided upon its peculiar set of facts. Clothier v. United Air Lines, Inc., 196 F.Supp. 435 (E.D. N.Y.1961).

██ As support for its position that it had its principal place of business in Pennsylvania on January 14, 1970, even though it was no longer engaged in any business activity, Read maintains that it nevertheless had its "principal office" in York, Pennsylvania, and was still registered to do business in Pennsylvania. We are unimpressed by Read's assertions. It is worth noting that the term "principal place of business" does not mean "principal office", Washington-East Washington Joint Authority v. Roberts and Schaefer Co., 180 F.Supp. 15 (W.D.Pa.1960), or "registered office". Berk v. Gordon Johnson Co., 212 F.Supp. 365 (E.D.Mich.1962). Carlton Properties, Inc. v. Crescent City Leasing Corp., 212 F.Supp. 370 (E.D.Pa. 1962). Furthermore, although Read may have had an office in Pennsylvania for sometime after August 6, 1968, there is no indication that it had one as of January 14, 1970. Moreover, by Read's own admission, (Read's Answers to Plaintiff's Interrogatories), it is established that as of January 14, 1970, Read did not have any office of its own in Pennsylvania, nor did Read pay rent for an office in Pennsylvania. Read did not own, rent or possess any office equipment or furniture and did not have any employees as of the relevant date. Moreover, as of January 14, 1970, and thereafter, Read did not make any sales or purchases of any products, and did not pay any wages or salaries.

Read makes much of the fact that it had an agent in Pennsylvania, who is authorized to receive complaints. Even assuming Read had such an agent on the relevant date, that fact, standing alone would be an insufficient basis for constituting its principal place of business. Surely, any such function would be merely duplicative of what Read is required to do in the state of Delaware where it is incorporated. See 8 Del.C. § 132.

██ While it is clear that under Title 28 U.S.C. § 1332(c), a corporation may be deemed to be a citizen of two states (the state wherein it is incorporated and the state in which it has its principal place of business), it is clear that a corporation may be a citizen of only one state, the state of its incorporation, if it is determined that its principal place of business happened to be in that state, at the time when an action is filed. Furthermore, the Court is of the opinion that the situation where a corporation is first formed and granted a charter, but has not commenced business, is not too much different, for purposes of 28 U.S.C. § 1332(c), from the facts and circumstances of the instant case where a corporation has ceased all of its business activities, has sold all of its assets, and is in the process of winding up. In both instances the corporation is deemed to

be a citizen only of the state of incorporation.

We cannot dismiss this action for lack of diversity of citizenship since at the time plaintiff filed suit, Read did not then have any office or place of business in Pennsylvania, and was not conducting any business activity, even though Read had its only manufacturing plant and office in Pennnsylvania at the time the cause of action arose. The Court is satisfied that there has been a sufficient showing that as of January 14, 1970, Read was a citizen only of Delaware where it had its only real existence by virtue of its incorporation in that state and by virtue of its not having its principal place of business elsewhere. Since the parties are of diverse citizenship, and the amount in controversy exceeds ten thousand dollars, this Court has jurisdiction over the subject matter of this action. Read's motion to dismiss will accordingly be denied.