# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 30, 2015 Session

## F&M MARKETING SERVICES, INC., v. CHRISTENBERRY TRUCKING AND FARM, INC., ET AL.

### Appeal from the Chancery Court for Knox County
### No. 1829852    Clarence E. Pridemore, Jr., Judge

_____

### No. E2015-00266-COA-R3-CV
### FILED-OCTOBER 19, 2015

_____

Plaintiff brought an action to pierce the corporate veil of defendant company and hold its sole shareholder personally liable for a debt. The trial court conducted a bench trial on the issue and found in favor of the defendant company and shareholder. The trial court initially declined to issue findings of fact in its final judgment. After both parties submitted their own proposed findings of fact, the trial court adopted the defendants' version nearly verbatim, incorporating two additional findings of fact of its own. However, because we find the trial court's findings of fact and conclusions of law insufficient to facilitate appellate review, we vacate the judgment of the trial court and remand for sufficient findings of fact and conclusions of law.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and BRANDON O. GIBSON, J., joined.

Christopher J. Oldham, Knoxville, Tennessee, for the appellant, F&M Marketing Services, Inc.

John Thomas McArthur, Melanie E. Davis, and Carlos A. Yunsan, Maryville, Tennessee, for the appellees Christenberry Trucking and Farm, Inc., and Clayton V. Christenberry, Jr.

## OPINION

**Background**

This case arises out of a contract dispute between Christenberry Trucking and Farm, Inc. ("Christenberry Trucking") and F&M Marketing Services, Inc. ("F&M" or "Appellant") in 2005. This is the second appeal arising from this dispute. *See **Christenberry Trucking & Farm, Inc. v. F&M Marketing Services, Inc.***, 329 S.W.3d 452 (Tenn. Ct. App. 2010), *perm. app. denied* (Tenn. Oct. 21, 2010). In the first appeal, this Court was charged with determining issues related to whether F&M could pursue an action for breach of contract. *See id.* at 457. Ultimately, we concluded that F&M could pursue an action against Christenberry Trucking. *See generally id.* On remand, the trial court entered a written order on February 13, 2012 awarding F&M a judgment totaling $375,524.29 plus post-judgment interest. The trial court entered its final judgment on February 13, 2012.

At the time the trial court entered judgment, Christenberry Trucking had no assets to satisfy the judgment. After learning this, F&M commenced an action on May 25, 2012 seeking to disregard the corporate entity of Christenberry Trucking and hold its primary shareholder, Clayton Christenberry, Jr., personally liable for the judgment against the corporation.

On June 26, 2012, Christenberry Trucking and Mr. Christenberry filed a motion to dismiss F&M's complaint to pierce the corporate veil. They argued that F&M's complaint failed to set forth particularized allegations for piercing the corporate veil and, therefore, failed to state a claim upon which relief may be granted. F&M responded to the motion to dismiss on August 31, 2012. Ultimately, the trial court denied the motion by written order entered September 11, 2012. Shortly thereafter, on October 5, 2012, Christenberry Trucking and Mr. Christenberry jointly filed their Answer to the complaint.

On October 7, 2013,[1] F&M moved to amend its original complaint to add additional defendants and claims. The additional defendants included Mr. Christenberry in his capacity as trustee and beneficiary of the Clayton V. Christenberry Jr. and Jannie Christenberry Revocable Trust ("the Trust"); the Trust; and Jannie Chistenberry, Mr. Christenberry's wife, in her individual capacity and her capacity as trustee and beneficiary of the Trust (collectively with Christenberry Trucking and Mr. Christenberry, the "Christenberry defendants"). In addition to its action to pierce the corporate veil, F&M also brought an action to set aside allegedly fraudulent conveyances and seeking a *lien lis pendens* on the Trust. F&M's motion to amend the complaint was eventually granted on November 25, 2013.

---

[1] It is unclear the reason for the substantial delay in the prosecution of this case.

2

The Christenberry defendants filed a motion to dismiss the amended complaint. They argued that F&M was a foreign corporation doing business in Tennessee without proper registration with the Tennessee Secretary of State pursuant to state law. Thus, they argued F&M was precluded from bringing suit in the state. F&M responded, and the trial court denied the motion to dismiss on November 20, 2013.

Because the Christenberry defendants had not yet responded to the amended complaint, F&M moved for a default judgment on February 6, 2014. On February 24, 2014, the Christenberry defendants filed an answer to the amended complaint, essentially denying that any transfer of the Trust was fraudulent.[2]

On March 5, 2014, the Christenberry defendants filed a motion to "bifurcate the trial against them in order to separately address [F&M's] causes of action pertaining to the Trust from the original action on piercing the corporate veil" against Christenberry Trucking and Mr. Christenberry individually. Furthermore, the Christenberry defendants sought to stay the action involving the Trust until the resolution of the action to pierce the corporate veil. Two days later, on March 7, 2014, Christenberry Trucking and Mr. Christenberry, in his individual capacity, filed an answer to the amended complaint.

The motion to bifurcate went unresolved for several months, and the Christenberry defendants moved again to bifurcate the trial on September 22, 2014. This time, F&M filed a response opposing the motion to bifurcate. On January 16, 2015, the trial court granted the motion to bifurcate the trial finding that the "action for piercing the corporate veil against [Christenberry Trucking] and Mr. Christenberry should be bifurcated from the action against the Trust Defendants for fraudulent transfer. . . ."

On February 4, 5, and 6, 2015, the trial court conducted a trial on F&M's action to pierce the corporate veil of Christenberry Trucking. At the conclusion of the trial, the trial court orally ruled from the bench, concluding that F&M had not carried its burden to prove that the corporate veil should be pierced. Because the second part of the bifurcated action concerning the Trust and the alleged fraudulent transfers was contingent upon a conclusion that the corporate veil should be pierced, the second part of the trial was pretermitted. Accordingly, the trial court dismissed the entirety of F&M's claims against all of the defendants. F&M filed a timely notice of appeal.

**Issues Presented**

---

[2] Subsequently, F&M filed a motion to disqualify the Christenberry defendants' counsel from representation, to strike the answer filed by the Christenberry defendants, and for sanctions. The crux of this motion involved an alleged conflict of interest between the Christenberry defendants and their attorneys. The parties made numerous filings relevant to this issue; however, they are immaterial to the issue presented for appeal.

As we perceive it, F&M raises three issues on appeal, which are taken from its brief and restated:

> 1. Whether the trial court made sufficient findings of fact and conclusions of law that were a product of its independent judgment?
>
> 2. Whether the trial court erred in finding that there was no basis to pierce the corporate veil of Christenberry Trucking & Farm?
>
> 3. Whether the trial court erred in finding that the Marital Dissolution Agreement provided Mr. Christenberry's payment to his former wife was a division of marital property and not alimony *in futuro*?

**"I'm not going to reiterate the facts. . . . I'm not required**

**to produce a Finding of Fact."**

As discussed above, the trial court in this matter was charged with determining whether Appellees carried their burden sufficiently to pierce the corporate veil of Christenberry Trucking & Farm. Before we address the substance of this appeal, it is necessary to discuss the trial court's oral ruling and its stance on the requisite findings of fact and conclusions of law. Accordingly, we turn to the statements made during the court's oral ruling pertaining to its obligation to make findings of fact.

After the bench trial on February 9, 2015, the trial court orally ruled in favor of Appellees. Regarding the trial court's obligation to make findings of fact, the transcript of the oral ruling provides:

> THE COURT: I'm not going to reiterate the facts. They are in the record enough. I'm not going to muddle up the transcript with a bunch more facts.
>
> * * *
>
> [COUNSEL FOR PLAINTIFF]: I would ask for a preparation of a Finding of Fact and Conclusion of [L]aw.
>
> THE COURT: I'm not required to produce a Finding of Fact. I can reiterate a Conclusion of Law if you want me to.

[COUNSEL FOR PLAINTIFF]: I would ask for a written – if the Court won't do a written Finding of Fact then I would ask for a written Conclusion of Law.

THE COURT: If you two parties want to prepare a Finding of Fact and submit them to me I can consider which one and introduce it into the record.

At this juncture, it is imperative that we discuss the applicability of Rule 52.01 of the Tennessee Rules of Civil Procedure to the case-at-bar. In bench trials such as this, Rule 52.01 provides that trial courts "**shall** find the facts specially and state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01 (emphasis added). Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See Poole v. Union Planters Bank N.A.*, No. W2009–01507–COA–R3–CV, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. *Id.* This Court has previously held that the requirement to make findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009).

The Tennessee Supreme Court recently explained that Rule 52.01 findings and conclusions serve three important purposes:

First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. *See Estate of Bucy v. McElroy*, No. W2012-02317-COA-R3-CV, 2013 WL 1798911, at *3–4 (Tenn. Ct. App. Apr. 26, 2013) (noting that the Rule 52.01 requirement facilitates appellate review); *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012) (same); *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (recognizing that without findings and conclusions appellate courts are left to wonder about the basis of a trial court's decision); *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004 (same); 9C [Charles A. Wright et al.,] Federal Practice and Procedure § 2571, at 219 [(3d ed. 2005)] [hereinafter 9C Federal Practice and Procedure] (recognizing that specific findings by the trial court facilitate appellate review). Second, findings and

5

conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making." 9C Federal Practice and Procedure § 2571, at 221–22. A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts." *Id.* at 222. Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal. *Hardin*, 2012 WL 6727533, at *5.

*Lovelace v. Copley*, 418 S.W.3d 1, 34–35 (Tenn. 2013). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.*, No. M2003–01739–COA–R3–PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004)). Furthermore, "the absence of findings and conclusions . . . leaves the parties without the thing they most need: a decision." *Adams v. Adams*, No. W2007-00915-COA-R3-CV, 2008 WL 2579234, at *6–*7 (Tenn. Ct. App. June 30, 2008).

Although the trial court stated it would not deign to issue findings of fact, the command of Rule 52.01 is clear that such findings are mandatory, rather than discretionary. Respectfully, the trial court's statement that it was "not required to produce a Finding of Fact" is categorically incorrect. Fortunately, at the behest of counsel for F&M, the trial court eventually permitted both parties to submit a proposed version of findings of fact and conclusions of law. The trial court apparently reviewed both and ultimately issued its Final Judgment on February 18, 2015, which included sections titled Finding of Facts and Conclusions of Law. Thus, the trial court's order, on its face, does appear to comply with Rule 52.01.

The question of whether the findings of fact and conclusions of law are sufficient, however, remains in dispute. Accordingly, we next address whether the findings and conclusions made by the trial court satisfy Rule 52.01.

### Piercing the Corporate Veil

In analyzing whether the trial court's findings and conclusions are sufficient, it is necessary to begin with the state of Tennessee law regarding the concept of "piercing the corporate veil," as it was the sole basis for the trial court's judgment in favor of Appellees in this case. There seems to have been some confusion in the trial court as to the appropriate test to be applied in determining the issue of whether the corporate veil should be pierced in this case. The trial court indicated its reliance on what it deemed three different "tests": the

***Continental Bankers***[3] test; the ***Barbour***[4] test; and the ***Allen***[5] factors, a test devised by the federal courts in 1984 and often applied by Tennessee courts thereafter. The trial court explicitly stated that F&M "has failed to carry its burden of proof necessary to impose piercing of the corporate veil of [Christenberry Trucking] under any of the aforementioned tests."

The trial court's and the parties' confusion as to the applicable test, however, was not warranted. Our research reveals that neither ***Continental Bankers*** nor ***Barbour*** provides the appropriate standard by which a court considers whether to pierce the corporate veil. First, the trial court relied upon ***Continental Bankers Life Insurance Co. of the South v. Bank of Alamo***, 578 S.W.2d 625 (Tenn. 1979), utilizing a three-prong "instrumentality rule." In that case, the ***Continental Bankers*** Court analyzed three factors to determine whether a parent corporation exercised such dominion and control over its subsidiary to render the subsidiary a mean "tool, agency, or instrumentality of the parent." ***Id.*** at 632, 633. In the instant case, although the trial court explicitly stated it was relying upon ***Continental Bankers***, it made no findings of fact or conclusions of law with respect to any of the three factors. Additionally, the trial court did not state why the ***Continental Bankers*** test was applicable, where the case-at-bar does not involve the question of whether a parent corporation should be liable for the wrong committed by its subsidiary. *See **Schlater v. Haynie***, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991) (stating that ***Continental Bankers*** addressed parent/subsidiary relationships and was therefore inapplicable to the case before it involving a corporation/shareholder relationship); *but see **Tenn. Racquetball Investors, Ltd. v. Bell***, 709 S.W.2d 617, 622 (Tenn. Ct. App. 1986) (recognizing that the ***Continental Bankers*** test may be applied in the situation where a wronged party seeks to hold the individual owner of a corporation liable for the debts of the corporation under the alter ego theory). Simply put, it is completely unclear how and why the trial court relied on ***Continental Bankers***, without findings of fact and conclusions of law relative to any of the three factors.

Next, the trial court relied upon ***Oceanics Schools, Inc. v. Barbour***, 112 S.W.3d 135 (Tenn. Ct. App. 2003). Specifically, the trial court provided that it relied upon the "sham or dummy corporation test" in ***Barbour***. A thorough reading of the ***Barbour*** case reveals that the Court of Appeals did not promulgate a "sham or dummy corporation" test in that case. The trial court isolated that phrase from the surrounding language in ***Barbour*** explaining that courts may pierce the corporate veil "upon a showing that it is a sham or a dummy or *where necessary to accomplish justice*." (Emphasis in original.) Even more importantly, the

---

[3] ***Continental Bankers Life Ins. Co. of South v. Bank of Alamo***, 578 S.W.2d 625 (Tenn. 1979).

[4] ***Oceanics Schools, Inc. v. Barbour***, 112 S.W.3d 135 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. June 30, 2003).

[5] ***FDIC v. Allen***, 584 F.Supp. 386 (E.D. Tenn. 1984).

7

*Barbour* Court "review[ed] all of the evidence—in the context of the *Allen* factors . . . ." *Id.* at 141. Thus, in *Barbour*, the *Allen* factors provided the backdrop for courts to consider whether a corporation is a sham or dummy corporation. Indeed, from our review of recent piercing the corporate veil cases, Tennessee cases nearly uniformly consider the *Allen* factors in determining this issue. *See* ***Rogers v. Louisville Land Co.***, 367 S.W.3d 196 (Tenn. 2012); ***Dog House Investments, LLC v. Teal Properties, Inc.***, 448 S.W.3d 905, 918 (Tenn. Ct. App. 2014), *perm. app. denied* (Tenn. July 11, 2014); ***Rock Ivy Holding, LLC v. RC Props., LLC***, 464 S.W.3d 623, 647 (Tenn. Ct. App. 2014), appeal denied (June 20, 2014); ***Edmunds***, 403 S.W.3d at 830. Accordingly, we turn to whether the trial court made sufficient findings concerning the *Allen* factors.

The Tennessee Supreme Court clearly outlined the appropriate test to utilize—the *Allen* factors—in considering a challenge to the corporate veil in ***Rogers v. Louisville Land Co.***, 367 S.W.3d 196 (Tenn. 2012). Although the trial court asserted during the trial that it "spent the last three nights reviewing a number of cases in this field," the seminal Tennessee Supreme Court Opinion on this issue does not appear to have been discussed or applied by the trial court or the parties at the trial level.

In *Rogers*, the Tennessee Supreme Court specifically stated that the factors promulgated by *Allen* "are applicable" when determining whether the corporate veil should be pierced.[6] Our research reveals no Tennessee case after the Opinion in *Rogers* in which the *Allen* factors have not been applied to reach a conclusion on whether piercing the corporate veil is warranted. According to *Rogers*:

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly

---

[6] Indeed, Tennessee's courts have consistently applied the factors in *Allen* to determine whether a corporation's legal identity should be disregarded. *See* *Rogers*, 367 S.W.3d at 215, 216; *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88 (Tenn. 2010); *H.G. Hill Realty Co., L.L.C. v. Re/Max Carriage House, Inc.*, 428 S.W.3d 23 (Tenn. Ct. App. 2013) ("The most common factors used by Tennessee courts to determine whether to pierce the corporate veil were originally set forth in [*Allen*]."); *Pamperin*, 275 S.W.3d at 438; *Altice v. NATS, Inc.*, No. M2007-00212-COA-R3-CV, 2008 WL 1744571, at *2–*3 (Tenn. Ct. App. Apr. 15, 2008), *no perm. app. filed*; *Marshall*, 2008 WL 5156312 at *6 (citing the above factors and noting that they are commonly referred to as the *Allen* factors); *AmPharm, Inc. v. Eastland Pharm. Servs., L.L.C.*, No. M2006-01334-COA-R3-CV, 2008 WL 4830803, *6 (Tenn. Ct. App. Nov. 5, 2008) (citing the *Allen* factors); *Dolle v. Fisher*, No. E2003-02356-COA-R3-CV, 2005 WL 2051288, *4 (Tenn. Ct. App. Aug. 26, 2005) (same); *Boles*, 175 S.W.3d at 245 (same); *Barbour,* 112 S.W.3d at 140 (same); *Emergicare Consultants, Inc. v. Woolbright*, No. W1998-00659-COA-R3-CV, 2000 WL 1897350, *2 (Tenn. Ct. App. Dec. 29, 2000) (same).

undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Id.* at 215 (citing *Allen*, 584 F.Supp. at 397). Generally, no one factor is conclusive in determining whether to pierce the corporate veil; rather, courts will rely upon a combination of factors in deciding the issue.[7] *Id.* (citing *Barbour*, 112 S.W.3d at 140).

Accordingly, we examine whether the trial court made sufficient findings of fact and conclusions of law with respect to the *Allen* factors. Here, the eleven factors in *Allen* require a fact-intensive inquiry for each individual case; the necessity for sufficient findings of fact and conclusions of law cannot be overstated in cases where a party seeks to pierce the corporate veil, as it "depends on the specific facts and circumstances of the case." *Dog House Investments, LLC v. Teal Props, Inc.*, 448 S.W.3d 905, 918 (Tenn. Ct. App. 2014). Although the trial court included in its final order that, "a few of the *Allen* factors may have been met," it is unclear which factual findings are attributed to that conclusion. It is also unclear which factors the trial court deemed met. Indeed, rather than the above statement, the trial court's written order and oral ruling contain no other mention of the trial court's application of the *Allen* factors.

We recognize that while "[t]here is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion **on each factual issue**.'" *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013). Respectfully, the trial court's order fails to meet this standard. We are unable to discern, for example, which of the *Allen* factors the trial court concluded favored piercing the corporate veil, and which the trial court concluded

---

[7] Our Opinion should not be read as an indication that *Rogers* abrogated either *Continental Bankers* or *Barbour*; instead, those cases may be considered with regard to the constellation of facts that makes up a piercing the corporate veil analysis.

did not. In addition, the trial court's order fails to disclose what facts led the trial court to these conclusions.

While the trial court did make some factual findings that could be relevant to some of the *Allen* factors, it is still unclear what conclusions of law were to be drawn from the findings. For example, the trial court found that "Capital of [$136,000.00] was paid into the corporation." The trial court did not, however, render a legal conclusion as to whether this constituted undercapitalization pursuant to the *Allen* factors. This is but one example of the inadequacy of the trial court's final order with respect to its findings and conclusions. Accordingly, it is impossible to decipher upon which factors the trial court based its decision.

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52.01 is to vacate the trial court's judgment and remand the cause to the trial court for written findings and conclusions of law. *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). However, this Court has indicated that we may "soldier on" with our review, despite the trial court's failure to comply with Rule 52.01, in certain limited circumstances:

> On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012) (quoting *Simpson v. Fowler*, No. W2011–02112–COA–R3–CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)).

*Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799 (Tenn. Ct. App. Feb. 22, 2013). Here, the issue of piercing the corporate veil is a fact-intensive inquiry that is not easily resolved, including the interpretation of many corporate and personal documents. Thus, the disputes in this case do not involve only clear legal issues.

The trial court's decision in this case is also not "readily ascertainable." *Id.* (quoting *Hanson*, 2012 WL 5873582, at *10). First, nothing in the trial court's written order or oral rulings indicates the reasoning underlying its decision to not pierce the corporate veil or which test on which it ultimately relied. The trial court's order includes no balancing of the factors as required by *Allen*, and indeed, does not even include conclusions of law relative to the factors in *Allen*. Furthermore, it is unclear what facts the trial court actually relied upon in making its determination. Respectfully, the trial court's failure to render specific findings concerning the factors, and even more importantly, the trial court's failure to render legal

conclusions as to any of the factors, warrant a vacatur of the final judgment. Under these circumstances, the appropriate remedy is to vacate the judgment and remand to the trial court for the entry of an order compliant with Rule 52.01.

Although we vacate the trial court's order for its noncompliance with Rule 52.01, we must address an ancillary concern raised by F&M in its appellate brief concerning counsel-prepared findings of fact and conclusions of law. As stated above, the trial court's oral ruling did not include any findings of fact, and each party was permitted to submit their own proposed findings. Although the trial court eventually considered both parties' submissions and reiterated a set of findings, the findings included in the trial court's final order are nearly identical to those submitted by Christenberry Trucking and Mr. Christenberry.[8] To this end, we note that "a court's decision[] must be, and must appear to be, the result of the exercise of the trial court's own judgment." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 312 (Tenn. 2014) (citing *Summers v. Thompson*, 764 S.W.2d 182, 190 (Tenn. 1988) (Drowota, J., concurring) (quoting *Perkins v. Scales*, 2 Tenn. Cas. (Shannon) 235, 237 (1877))). Here, the trial court refused to make findings of fact on the record even after counsel requested such findings. Accordingly, the parties were required to draft proposed orders with no indication from the trial court as to how it found the disputed facts or which facts were relevant to the trial court's ultimate decision. The manner in which the trial court entered its final judgment in this case comes perilously close to violating *Smith*. On remand, in addition to entering an order compliant with Rule 52.01, we also advise the trial court to be mindful of the Tennessee Supreme Court's recent decision opining on a trial court's obligation to ensure that its orders afford this Court appropriate insight into the trial court's reasoning, as well as result from the trial court's independent judgment. *See Smith*, 439 S.W.3d at 314 ("[W]e continue to adhere to the view that findings of fact, conclusions of law, opinions, and orders prepared by trial judges themselves are preferable to those prepared by counsel.").

## Conclusion

The judgment of the Chancery Court of Knox County is vacated, and this cause is remanded to the trial court for further proceedings in accordance with this Opinion. Costs of this appeal are taxed one-half to Appellant F&M Marketing Services, Inc. and its surety, and one-half to Appellees Christenberry Trucking and Farm, Inc. and Clayton V. Christenberry, Jr., for all of which execution may issue, if necessary.

_____

---

[8] The trial court's final order includes two additional findings of fact, both containing general non-disputed information about F&M's claim against Christenberry Trucking and Mr. Christenberry.

J. STEVEN STAFFORD, JUDGE